*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

OSCAR FLORENCIO HERNANDEZ,

   Plaintiff-Appellant,

v

DOMINIQUE LAVALL MOORE and JABIL CIRCUIT, INC.,

   Defendants,

and

AEROTEK, INC.,

   Defendant-Appellee.

UNPUBLISHED
September 17, 2019

No. 343648
Oakland Circuit Court
LC No. 2017-158285-NO

---

OSCAR FLORENCIO HERNANDEZ,

   Plaintiff-Appellee,

v

DOMINIQUE LAVALL MOORE and JABIL CIRCUIT, INC.,

   Defendants,

and

AEROTEK, INC.,

   Defendant-Appellant.

No. 344954
Oakland Circuit Court
LC No. 2017-158285-NO

---

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

-1-

PER CURIAM.

These consolidated appeals involve plaintiff's allegations against defendant Aerotek, Inc., that it was negligent in its hiring and retention of defendant Dominique Moore.[1] In Docket No. 343648, plaintiff appeals as of right and challenges the trial court's order granting summary disposition in favor of Aerotek under MCR 2.116(C)(10) on plaintiff's negligent hiring and retention claim. In Docket No. 344954, Aerotek appeals as of right the trial court's order denying Aerotek's motion requesting a finding that plaintiff's lawsuit was frivolous and that it was therefore entitled to sanctions. For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand this matter for further proceedings.

I. BACKGROUND

This case arises out of a workplace incident during which Moore apparently stabbed plaintiff multiple times with a box cutter while they were both working at a Jabil Circuit, Inc. facility on May 12, 2016. According to plaintiff's complaint, plaintiff was employed by Jabil at the time of the incident as a solderer, which required him to build circuit boards using a soldering iron. It was undisputed that Moore was a contract employee employed by Aerotek, a staffing company, and that he was assigned to work at the same Jabil facility as plaintiff.

In his deposition, plaintiff testified that on the day of the incident, he arrived at work at approximately 5:30 a.m., and went on the manufacturing floor shortly before 6:00 a.m. Moore asked plaintiff to help him, and plaintiff walked over and assisted Moore with using his computer. According to plaintiff, he finished explaining how to use the computer program and Moore "said 'thanks' in a not nice tone." Plaintiff testified that he got up to return to his work station, and Moore "stabbed [him] in the arm twice" and then "tried to stab [him] in [the] face." Plaintiff blocked this attempt with his right hand and then fell down and passed out. Plaintiff alleged in his complaint that Moore used a box cutter to stab him in his right arm and hand. According to the complaint, there had not been "angry words or conduct" between plaintiff and Moore, and the attack was not provoked by plaintiff.

On April 13, 2017, plaintiff initiated this action, alleging that his injuries included a puncture wound to the back of his right hand that resulted in "tendon and other permanent damage." Plaintiff further alleged that medical treatment for these injuries had been unsuccessful in returning him to "pre-attack functionality" and that he had stopped working at Jabil because he was unable to perform his duties as a solderer due to the permanent damage to his dominant hand. As pertinent to the instant appeal, plaintiff raised a claim of negligent hiring and retention against Aerotek, alleging that there was obtainable information that Moore had previously committed an act of workplace violence and that Aerotek knew or should have known

---

[1] Aerotek is the only defendant that is a party to these consolidated appeals, and these appeals only concern plaintiff's claim of negligent hiring and retention. Although plaintiff raised other claims in his complaint, the parties have not raised any issues related to those other claims in the context of these appeals. Therefore, we will not discuss plaintiff's other claims in detail.

about Moore's propensity for workplace violence before hiring Moore. Although the complaint did not specifically identify the nature of the alleged prior incident of workplace violence committed by Moore, plaintiff relied during the course of the proceedings below on a June 6, 2015 incident that purportedly occurred while Moore was employed by a different company. That incident was described in a police report and involved Moore allegedly punching another employee multiple times.

Aerotek eventually moved for summary disposition on plaintiff's negligent hiring and retention claim[2] under MCR 2.116(C)(10), arguing that the uncontested evidence showed that Aerotek had no knowledge of any prior physical altercation or propensity for violence with respect to Moore before it hired him. Aerotek specifically argued that it did not have a duty to protect plaintiff from the harm that occurred because it did not actually know of any prior violent act by Moore (including the prior workplace incident where Moore allegedly punched a coworker) or have any information that would have suggested a propensity to stab a coworker or otherwise act violently, and Moore's specific act of violence in the instant case was therefore not foreseeable. Aerotek further argued that a reference check and criminal background check had not revealed any evidence of prior violent conduct by Moore or a propensity for violence, that it was not required under Michigan law to have conducted a more in-depth background check into Moore's prior conduct, and that an employer is not automatically imputed with constructive knowledge of an employee's criminal history simply because it may be contained in public records or documents. Finally, Aerotek argued that even if it had discovered information about Moore's alleged previous physical assault where he punched a coworker, plaintiff could not succeed on his negligent hiring and retention claim because an isolated prior incident involving punching would not indicate that Moore had a propensity to stab a coworker.

Plaintiff opposed the motion, arguing that there were genuine issues of material fact regarding whether Aerotek was aware of Moore's prior act of workplace violence and was thus negligent in hiring Moore. Specifically, plaintiff argued that there was evidence that Moore had attacked a coworker at a previous place of employment and that Moore had provided information regarding his violent propensity to Aerotek. Plaintiff asserted that information demonstrating Moore's propensity for workplace violence was "readily obtainable" because a police report involving a 2015 incident where Moore attacked a coworker was "easily obtained" by plaintiff. According to plaintiff, Moore had also disclosed to Aerotek in paperwork associated with his

---

[2] Plaintiff filed a four-count complaint, raising claims of assault and battery against Moore (Count I), respondeat superior against Aerotek and Jabil (Count II), negligent hiring and retention against Aerotek and Jabil (Count III), and negligent supervision against Jabil (Count IV). The trial court granted Jabil's motion for summary disposition regarding the claims against it on August 23, 2017. Count II was dismissed without prejudice with respect to Aerotek pursuant to a stipulated order entered on December 21, 2017. All of plaintiff's claims against Moore were dismissed without prejudice pursuant to a stipulated order entered on May 16, 2018. None of these rulings are challenged on appeal. The only count at issue in the instant appeal is plaintiff's claim against Aerotek for negligent hiring and retention, which was the only count remaining against Aerotek when it filed the motion for summary disposition referenced above.

employment application that he had been convicted of a felony or misdemeanor in 2015 and that he had spoken to somebody in the office about it. Plaintiff argued that this evidence, coupled with the fact that Moore was personally interviewed by an Aerotek recruiter, supported the reasonable inference that Moore had informed Aerotek's recruiter of his propensity for workplace violence. Plaintiff maintained that this August 2015 conviction temporally corresponded with the occurrence of the 2015 workplace assault committed by Moore. Plaintiff essentially argued that Aerotek should have utilized more thorough procedures in vetting Moore for potential employment in light of his disclosure about a 2015 conviction. Finally, plaintiff contended that whether the employer knew or should have known about an employee's violent propensity should be determined by a jury.

In support of their respective positions, the parties submitted the following evidence regarding the process used in hiring Moore.

Nicholas Bishop, who was employed by Aerotek as the account manager for Aerotek's client Jabil, averred in his affidavit that he was involved in the prehiring process for Moore with respect to Moore's potential employment and placement with Jabil. According to Bishop, Aerotek "is a staffing company that is engaged by its clients to identify individuals the clients may choose to hire, on a temporary basis, to perform various tasks and services needed by the clients." Aerotek's prehiring process is significantly based on the specific requests of the client with which the individual will be placed. If requested by the client, Aerotek will speak to references, arrange for client-specified drug and skills tests, and arrange for criminal background searches to be performed during the pre-employment process. Bishop testified in his deposition that pursuant to Jabil's request, Aerotek completed two reference checks with references provided by Moore. Bishop averred that he personally contacted one of Moore's references, who was a prior supervisor of Moore's. According to Bishop, he did not receive any information about any prior physical altercation involving Moore, or any information suggesting that Moore had a history of violence or a "short temper" during Bishop's discussions with Moore's reference or at any time during the prehiring process. Bishop averred that he did not learn of any previous physical altercation involving Moore until after the incident involving plaintiff occurred.

Tiffani Roumaya, according to her affidavit, was an Aerotek recruiter involved in the prehiring process for Moore. Roumaya testified in her deposition that Bishop was her supervisor. Roumaya averred that she conducted an initial telephone screening interview with Moore, as well as a subsequent in-person interview with him. In her deposition, Roumaya testified that she did not recall "any red flags" during her initial telephone contact with Moore and that this conversation would have been a typical discussion of Moore's previous job experience, qualifications, and interest in the job, as well as compensation and next steps in the process. Roumaya also did not recall any red flags from her face-to-face interview with Moore. Roumaya testified that she listened on the telephone line as Bishop completed Moore's reference check, and Moore's reference spoke "favorably" about Moore. Roumaya averred that she "did not receive any information suggesting or indicating that Moore had any history of violence or a short temper, during [her] discussions with Moore or Moore's references, or at any time during the pre-hiring process." She further averred that she did not receive any information about any prior physical altercation involving Moore until after the incident between Moore and plaintiff that is currently at issue occurred.

On the same day as his face-to-face interview, Moore completed a "Background Check Subject Profile Form" in which he was asked, "Have you been convicted of a felony and/or misdemeanor in the past 7 years?" Moore checked the box indicating "YES." Where the form asked for the name of the offense, Moore wrote "I [sic] talked to someone in office about it." Moore indicated that the date of the conviction was August 2015, and that the city where it occurred was Pontiac.[3]

Roumaya testified that she never spoke to Moore about any felony or misdemeanor conviction that he had within the prior seven years. Additionally, Roumaya indicated that she did not have any conversation with anybody at Aerotek about an August 2015 felony or misdemeanor conviction involving Moore at any time between her initial conversation with Moore and his starting date at Jabil. Roumaya did not know if anybody at Aerotek spoke to Moore about this conviction. Bishop averred that he never received a copy of Moore's background check subject profile form and was not aware of Moore's statements in the form until after the incident forming the basis for the instant lawsuit occurred. Bishop further averred that Moore never discussed a felony or misdemeanor conviction with him. Additionally, Bishop testified in his deposition that he never spoke to anybody about Moore talking to somebody in the office about a felony or misdemeanor conviction from within the prior seven years.

Allison Sions averred in her affidavit that she was employed as Strategic Account Manager for Sterling Talent Solutions (Sterling) and that Sterling was engaged by Aerotek to perform a criminal records search for Moore in connection with his potential placement with Jabil. Sterling's search revealed that Moore had been convicted in Michigan for a misdemeanor controlled substance offense and a misdemeanor operating with license suspended, revoked, or denied offense. The only disposition year listed in Sterling's background screening report is 2010, but it is unclear whether this date applies to both convictions. This information was reported to Aerotek. Sions averred that the criminal records search did not uncover any records or information about any prior violent offense or conduct involving Moore.

Bishop averred that the background search results were provided to Aerotek but that none of the identified convictions constituted grounds to disqualify Moore from employment. Bishop testified in his deposition that Sterling was responsible for determining whether Moore passed or failed his background check. Bishop also confirmed that the background check report did not identify any felony or misdemeanor conviction in August 2015 for Moore. Roumaya testified in her deposition that she did not ever see the results of Moore's background check and that she had no role in evaluating the results of the background check.

Nonetheless, as previously noted, the record reflects that Moore was involved in an incident on June 6, 2015, while working for a previous employer during which he physically assaulted a coworker. The incident is described in a police report from the Oakland County Sheriff Office in Pontiac, Michigan, which was attached to both Aerotek's summary disposition

---

[3] We note that although this document was attached to both parties' summary disposition filings, Aerotek later argued in its summary disposition reply brief that this document would be inadmissible at trial. As explained below, we express no opinion on this particular issue.

motion and plaintiff's response. According to the police report, the victim of that assault stated that he was training Moore, who was having trouble using one of the machines. At some point, Moore told the victim, "Dude, I'm just letting you know don't mess with me. I have a short temper." The victim responded that he was trying to help and then turned around to walk away. The victim indicated that he subsequently felt Moore punch him twice in the back of the head. The victim fell to the ground, and Moore "continued by jumping on him and punching him about the face, hitting him an additional 3 to 4 times while they were on the ground." Eventually, Moore grabbed a metal hook and told the victim to walk away. The police report indicates that a "Warrant pack" was submitted to the city prosecutor for simple assault and battery.

Plaintiff testified in his deposition that he believed that Aerotek should have known about this incident "[b]ecause of how easy it was for me to obtain the police report." Plaintiff explained that he obtained the police report by going "to the police station" himself.

Following a hearing on the motion for summary disposition in which the parties advanced arguments consistent with their written filings, the trial court issued an opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(10). The trial court ruled in pertinent part as follows:

> The Court finds that Plaintiff has failed to produce any competent evidence that Aerotek had actual knowledge of Moore's prior fistfight. Furthermore, the Court finds that even if Aerotek had known about the single fistfight, that would not support Plaintiff's claim because Michigan law requires that the employee's prior conduct indicate a propensity to commit the act currently complained of before an employer will be held negligent.

The trial court subsequently issued a stipulated order of dismissal dismissing plaintiff's claims against Moore and Jabil without prejudice[4] and dismissing plaintiff's claims against Aerotek with prejudice. The order provided that it resolved the last claim and closed the case. Plaintiff now proceeds with his appeal in Docket No. 343648 as of right, challenging only the trial court's summary disposition ruling on plaintiff's negligent hiring and retention claim against Aerotek.

After plaintiff filed his claim of appeal in this Court, Aerotek moved the trial court to find that plaintiff's claims against it were frivolous and to impose sanctions under MCL 600.2591. Aerotek argued that it was entitled to sanctions in the form of costs and fees under MCL 600.2591 on the ground that plaintiff's negligent hiring and retention claim was frivolous because plaintiff's legal position was devoid of arguable legal merit. Aerotek maintained that plaintiff's claim was devoid of legal merit because (1) Moore's prior altercation did not demonstrate a propensity to stab coworkers even if the facts were as plaintiff believed them to be and (2) plaintiff knew by the close of discovery that there was no evidence to show that Aerotek knew about Moore's prior altercation.

---

[4] As previously noted, these dismissals are not at issue in the instant appeal.

In opposing this motion, plaintiff argued that Aerotek improperly delayed filing the motion and that Aerotek's primary purpose in bringing the motion was to punish plaintiff for appealing the summary disposition ruling. Plaintiff further argued that his lawsuit was not frivolous because there was evidence that Moore committed a prior act of workplace violence before the attack on plaintiff and that Moore had informed Aerotek through his employment paperwork that he had a conviction from the same time period as this prior workplace incident, which supported plaintiff's argument that Aerotek should have known about Moore's propensity for workplace violence and was thus negligent in hiring him. According to plaintiff, the trial court erroneously granted summary disposition in Aerotek's favor based on mischaracterizing the prior workplace incident as a "fistfight" between the two employees rather than as an unprovoked attack by Moore on the victim coworker. Plaintiff maintained that the mere fact that he was unsuccessful in the trial court did not mean that his action was frivolous. Plaintiff also contended that there was sufficient similarity between the two workplace incidents such that even the single prior incident could show Moore's propensity for workplace violence pursuant to Michigan caselaw. Plaintiff additionally argued that the trial court should instead sanction Aerotek for impermissibly harassing plaintiff, causing undue delay, and causing plaintiff unnecessary expense.

The trial court held a hearing on Aerotek's motion, and the parties made arguments in accordance with those raised in their briefing. At the conclusion of the hearing, the trial court ruled from the bench in pertinent part as follows:

> Thank you. The Court has listened carefully to the representations by counsel. This is before the Court on the defendant's motion for a finding of frivolousness and imposition of sanctions. The motion is denied for various reasons, specifically the parties stipulated to dismiss the case without cost or attorney fees in a stipulated order dated May 16, 2018.

> In addition, the plaintiff may have had reasonable belief in [the] negligent hiring claim when the lawsuit was filed. Further, the plaintiff has filed an appeal that is pending. In addition, the Court is denying plaintiff's counter complaint [for sanctions] for the reasons as to the request for sanctions, rather [sic]. Denied.

The trial court subsequently entered an order to this effect. Aerotek appeals by right this order in Docket No. 344954.

This Court entered an order consolidating these appeals "to advance the efficient administration of the appellate process." *Hernandez v Moore*, unpublished order of the Court of Appeals, entered August 15, 2018 (Docket Nos. 343648 and 344954).

## II. DOCKET NO. 343648

In Docket No. 343648, plaintiff argues that the trial court erred by granting summary disposition in Aerotek's favor because the trial court incorrectly characterized the prior incident involving Moore as a "fistfight," the trial court failed to acknowledge the similarities between Moore's two workplace assaults showing his propensity to commit the similar surprise attack on plaintiff at issue in this case, and there was a question of fact regarding whether Moore informed

Aerotek of the prior workplace assault when he spoke to "someone in [the] office" about his August 2015 conviction. Plaintiff further argues that Aerotek should have known about Moore's prior workplace assault because Moore responded to an employment form question asking about his criminal convictions "with information about his prior surprise attack." Essentially, plaintiff's appellate challenge relies on his arguments that the evidence reflects that Aerotek had sufficient information that should have caused it to have "done more to investigate what the August 2015 criminal conviction in Pontiac involved" and that Moore would not have been hired had this further investigation occurred.

## A. STANDARD OF REVIEW

Our review of a trial court's summary disposition decision is de novo. *Brown v Brown*, 478 Mich 545, 551; 739 NW2d 313 (2007). When a summary disposition motion is premised on MCR 2.116(C)(10), this Court's review considers "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Id*. at 551-552. "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 552. We also review de novo as a question of law whether a party owes a legal duty to another. *Id*.

## B. ANALYSIS

As this Court has previously recognized, a claim that an employer was negligent in the hiring or retention of an employee generally constitutes an allegation that the employer itself committed a direct tort rather than an allegation that the employer is vicariously liable for a tortious act of the employee. *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 571-572, 574; 918 NW2d 545 (2018). "[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Id*. at 574.

Our Supreme Court has stated that an employer may be held liable for damages to the victim of an intentional tort committed by the employer's employee at the employer's place of business if the employer "knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by employee." *Hersh v Kentfield Builders, Inc*, 385 Mich 410, 412; 189 NW2d 286 (1971) (quotation marks and citation omitted). "[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable," and "employers are not expected to anticipate that their employees will engage in criminal conduct without some particularized forewarning thereof." *Mueller*, 323 Mich App at 575. The *Mueller* Court summarized this principle as follows:

> Thus, lewd and crude commentary is not enough to put an employer on notice that an employee will commit a rape, although an actual threat to commit a rape would. *Brown*, 478 Mich at 555-556. A past history of generally aggressive and irresponsible behavior is not enough to put an employer on notice that the employee would engage in a violent sexual assault. [*Hamed v Wayne Co*, 490 Mich 1, 16; 803 NW2d 237 (2011)]. Knowledge of an employee having actually

-8-

committed another rape would justify anticipating that the employee would reoffend, if the employer had good reason to know of the prior crime. *Bradley v Stevens*, 329 Mich 556; 46 NW2d 382 (1951). However, employers are not strictly liable for their employees' misconduct that goes beyond what would generate vicarious liability under respondeat superior. *Zsigo v Hurley Med Ctr*, 475 Mich 215, 226-227; 716 NW2d 220 (2006). [*Mueller*, 323 Mich App at 575.]

In this case, there is no evidence regarding what Moore allegedly disclosed to some unnamed individual in the office at Aerotek. Moore merely stated on the background check subject profile form that he discussed "it" with somebody in the office. We are unable to discern from this record what crime Moore believed he was convicted of in August 2015, whether Moore's alleged disclosure included any underlying details of this offense, or even what the general subject matter of his alleged discussion with "someone" in the office was.

In this regard, we further note that plaintiff has not provided any evidence that links the incident described in the police report to the unspecified August 2015 conviction reported by Moore in his background check subject profile form. Instead, plaintiff has simply assumed that there is a relationship based on their temporal proximity, but there is nothing in the record that permits us to make that inferential assumption. Plaintiff has not provided any evidence that the incident described in the police report actually resulted in a conviction for a felony or misdemeanor. Indeed, plaintiff has not provided any evidence that Moore was convicted of any felony or misdemeanor in 2015.[5] The only record evidence regarding Moore's actual felony or misdemeanor convictions appears in the affidavit of Sions and the accompanying background screening report, and this evidence lacks any indication that Moore was convicted of any felony or misdemeanor in 2015. The only evidence in the record that the prior workplace altercation occurred is contained in the police report, and it is undisputed that nobody at Aerotek had any actual knowledge that this police report existed or any information that would have suggested such a police report even potentially existed.

Plaintiff's theory of liability depends, in one sense, on the assumption that Moore must have told Aerotek about the prior workplace incident described in the police report. However, the record evidence simply does not support such a conclusion without resorting to speculation and conjecture, which is inappropriate in the context of summary disposition.

> [P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact . . . . A conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. [*Karbel v Comerica Bank*, 247 Mich App 90, 97-98; 635 NW2d 69 (2001) (quotation marks and citation omitted; ellipsis in original).]

---

[5] While the parties have made some references in their briefs to how this 2015 incident was supposedly resolved, there is no evidence in the record to support their various assertions on this point.

The trial court in this case correctly recognized that it could not speculate about what knowledge Aerotek may have possessed. In sum, there is no evidence in the record that would permit a reasonable inference that Aerotek possessed any information that would have put it on notice that Moore was likely to commit an act of workplace violence of any kind, much less stab a coworker. *Mueller*, 323 Mich App at 575; *Brown*, 478 Mich at 561 ("This Court emphasized in *Hersh* that it is the employee's *known past acts* that provide a basis for the employer's knowledge of the employee's 'impropriety, violence, or disorder' and that those acts potentially place an employer on notice of the employee's violent propensities."); see also *Karbel*, 247 Mich App at 107 (concluding that "proffered evidence constitut[ing] only a mere possibility . . . is insufficient to raise a material question of fact and overcome [a] summary disposition motion") (quotation marks and citation omitted).

In another sense, the crux of plaintiff's argument is actually that Aerotek should have conducted a more thorough investigation into Moore and that it would have discovered that the prior workplace incident occurred had it conducted this more thorough investigation.

An employer has a duty "to exercise reasonable care in selecting and retaining its employees." *McClements v Ford Motor Co*, 473 Mich 373, 381 n 6; 702 NW2d 166 (2005). "The duty is to use reasonable care to assure that the employee known to have violent propensities is not unreasonably exposed to the public." *Tyus v Booth*, 64 Mich App 88, 92; 235 NW2d 69 (1975). However, "[a]n employer is not absolutely liable for assault committed by his employee." *Id*. An employer is "not required to conduct an in-depth background investigation of his employee." *Id*.

Accordingly, Aerotek did not have a duty to continue to investigate until it discovered the police report relied on by plaintiff or to otherwise have discovered that the prior workplace incident allegations existed. As previously discussed, there is no evidence that Aerotek actually possessed any information before Moore was hired to suggest that this prior workplace incident may have occurred.[6] Aerotek engaged Sterling to conduct a criminal background check on Moore, which did not reveal the existence of any criminal conviction in 2015 or any information regarding an alleged incident of workplace violence committed by Moore in 2015. Aerotek was not somehow legally required to continue investigating to see if it could find any police reports or other allegations of violent conduct committed by Moore or to ensure that nothing was missed by Sterling in its background check. *Id*.

Although the standard for establishing a claim of negligent hiring or retention has been stated by appellate courts in terms of requiring that the employer "knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by employee[,]" *Hersh*, 385 Mich at 412 (quotation marks and citation omitted), or that the employer had "actual or constructive knowledge" of the employee's propensities, *Mueller*, 323

---

[6] In other words, Aerotek may have possessed information of some kind since Moore indicated on his background check subject profile that he spoke to "someone" about "it," but there is no evidence regarding the substantive contents of this alleged discussion. Plaintiff has only offered speculative assumptions about the contents of this discussion.

Mich App at 575, it is evident from this Court's decision in *Tyus* that an employer is not automatically charged with having constructive knowledge of the employer's criminal record or allegations of misconduct merely because that information might be discoverable.

In *Tyus*, 64 Mich App at 89, the plaintiffs sued the owner of a gasoline service station based on allegations that a service station employee had committed unprovoked assaults on them. The plaintiffs claimed that the employer was negligent by "expos[ing] the public to an employee with known violent propensities." *Id*. In that case, the plaintiffs' claim rested on a theory of liability similar to the one at issue in the instant case:

> Upon questioning by the trial court, plaintiffs' counsel made it known that there was no evidence that defendant had actual knowledge of prior assault convictions of the employee. He relied instead on the claim that defendant employer, in the exercise of reasonable care, should have discovered the employee's criminal record and should then have isolated him from the public, and particularly the plaintiffs. The claimed negligence stems from defendant's failure to diligently unearth his employee's background and discover his criminal record. [*Id*. at 91.]

This Court concluded that the employer "was not required to conduct an in-depth background investigation of his employee." *Id*. at 92. In support of this conclusion, the *Tyus* Court quoted with approval the reasoning from *Tortora v Gen Motors Corp*, 373 Mich 563, 567-568; 130 NW2d 21 (1964), which we quote in pertinent part here:

> All plaintiff offers in support of his burden is allegation that, since the records maintained . . . are public records . . ., the defendant employer was under legal duty to keep abreast of such records and to act preventively upon finding what it would have found respecting the transgressions of employee Boike . . . . No authority for such contention has been cited. [*Tyus*, 64 Mich App at 92 (quotation marks and citation omitted).]

In this case, Aerotek cannot be charged with constructive knowledge of the facts of the prior workplace incident involving Moore and described in the police report merely because Aerotek allegedly could have discovered this police report if it had continued searching. *Id*. Notably, there is no evidence that Aerotek possessed any information before the underlying assault of plaintiff at issue in this case to suggest that such a police report existed, and Sterling's background check did not reveal any information about a conviction in 2015 or any violent acts committed by Moore. Thus, we do not understand why Aerotek would have had any reason to conduct such a search. Moreover, an in-depth background check is not legally required, *id*., and Aerotek likewise did not have a legal duty to resolve the apparent discrepancy between the background check results and Moore's vague statements on the background check subject profile form when the independent information received from Aerotek through Sterling's background check indicated that Moore did not have any criminal conviction in 2015. If we were to hold that an employer is charged with having constructive knowledge of an employee's alleged prior misconduct under the facts of this case, then we would effectively be charging employers with having a duty to conduct in-depth background investigations, which is a duty that employers do not have. *Id*.

-11-

The trial court did not err by granting summary disposition in favor of Aerotek on plaintiff's negligent hiring and retention claim because there was no evidence from which to reasonably infer that Aerotek knew or should have known that Moore had a propensity for workplace violence and Aerotek did not have a legal duty to conduct a more in-depth investigation of Moore.[7] We affirm the trial court's order granting summary disposition.

III. DOCKET NO. 344954

In Docket No. 344954, Aerotek challenges the trial court's ruling denying its motion for a finding that plaintiff's lawsuit was frivolous and that Aerotek was therefore entitled to sanctions.

A. STANDARD OF REVIEW

"A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *Meisner*

---

[7] Having reached this conclusion, there is no need for us to continue further in our analysis to address the propriety of the trial court's ruling that Moore's alleged prior act did not indicate a propensity to commit the type of assault that was committed against plaintiff. As we have thoroughly explained, there was no genuine issue of material fact that Aerotek lacked actual or constructive knowledge of *any* prior incident of workplace violence.

Furthermore, it is unnecessary to address the parties' arguments regarding the admissibility of the background check subject profile form and the police report as evidence. First, although the trial court stated that plaintiff "failed to produce any competent evidence that Aerotek had actual knowledge of Moore's prior fistfight," this statement is somewhat ambiguous regarding a conclusion on admissibility. It could reasonably be understood as a statement that is in accord with our conclusions in this opinion that plaintiff did not present *any* evidence at all that Aerotek possessed any information from which it could reasonably be inferred that Aerotek knew about Moore's alleged prior act of workplace violence. Second, to the extent that the trial court's use of the word "competent" implies that the trial court made a ruling on admissibility of evidence, there is no explicit indication that the court determined any particular piece or pieces of evidence to be inadmissible and there is no analysis regarding the reasoning for such a ruling. However, regardless of these observations, we decline to address the parties' arguments on admissibility because even if we give plaintiff the benefit of the doubt and assume that the evidence relied on by plaintiff was admissible, plaintiff still has not provided any evidence that Aerotek knew or should have known about Moore's prior workplace incident for the reasons more fully explained in this opinion. Thus, we express no opinion on the admissibility arguments raised by the parties.

Finally, although the trial court's ruling failed to address whether there was evidence of constructive knowledge on the part of Aerotek, we have explained in this opinion why no evidence was presented from which it could reasonably be inferred that Aerotek had the requisite constructive knowledge. We may affirm the trial court's summary disposition ruling if it reached the correct result, even if our reasoning differs. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015).

*Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 730; 909 NW2d 890 (2017) (quotation marks and citation omitted). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Under MCL 600.2591, determining whether a claim is frivolous "depends on the facts of the case." *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002).

## B. ANALYSIS

Aerotek's motion in the trial court was premised on MCL 600.2591, which provides as follows:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

> (3) As used in this section:

> (a) "Frivolous" means that at least 1 of the following conditions is met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

> (b) "Prevailing party" means a party who wins on the entire record.

Crucial to our resolution of this issue on appeal is the fact that Aerotek's motion below was grounded solely on the definition of frivolousness contained in MCL 600.2591(3)(a)(*iii*), providing that the "party's legal position was devoid of arguable legal merit." An action "is devoid of arguable legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Bronson Health Care Group, Inc v Titan Ins Co*, 314 Mich App 577, 585; 887 NW2d 205 (2016) (quotation marks and citation omitted).

In explaining its ruling, the trial court in this case gave three explicit reasons for denying Aerotek's motion: (1) that "the parties stipulated to dismiss the case without cost or attorney fees in a stipulated order dated May 16, 2018"; (2) that "the plaintiff may have had reasonable belief

-13-

in negligent hiring claim when the lawsuit was filed"; and (3) that "the plaintiff has filed an appeal that is pending." None of these grounds provided a proper basis on which to resolve Aerotek's motion under MCL 600.2591(3)(a)(*iii*).

As an initial matter, the first reason given by the trial court is factually inaccurate. The May 16, 2018 order does not mention costs or attorney fees, and it does not include any such stipulation. Plaintiff argues on appeal that the language in the stipulated order of dismissal stating that "this resolves the last claim and closes this case" operated to bar Aerotek for moving for sanctions under MCL 600.2591 and that Aerotek did not explicitly preserve its ability to move for sanctions on the ground that plaintiff's action was frivolous. However, plaintiff has cited no authority for the proposition that Aerotek had to expressly preserve its ability to file a motion under MCL 600.2591 after the merits of the underlying action were resolved. Sanctions under MCL 600.2591 are only awarded to "the prevailing party." MCL 600.2591(1). "Prevailing party" means "a party who wins on the entire record." MCL 600.2591(3)(b). Obviously, it cannot be determined which party has won "on the entire record" before all of the claims have been resolved in the case. See *In re Attorney Fees & Costs*, 233 Mich App 694, 699; 593 NW2d 589 (1999) ("When costs are awarded pursuant to MCL 600.2591, the appropriate standard for determining whether the motion for costs is timely is whether the motion was filed within a reasonable time after the prevailing party was determined . . . .. The prevailing party was determined in this case when the trial court granted defendants' motion for summary disposition and dismissed plaintiffs' action on November 30, 1995.").

Moreover, with respect to the first and third reasons stated by the trial court below, it is clear from the caselaw addressing MCL 600.2591 that a party may permissibly move for sanctions under this statute after a final order dismissing the case has been filed and while an appeal is pending. "[T]here can be more than one final judgment or order in an action," and an "order to allow attorney fees after entry of an order disposing of the meritorious question is one of the specific circumstances where separate final orders are recognized." *Avery v Demetropoulos*, 209 Mich App 500, 503; 531 NW2d 720 (1994); see also MCR 7.202(6)(a)(iv) (defining a final judgment or order in a civil case to include "a postjudgment order awarding or denying attorney fees and costs under MCR 2.403, 2.405, 2.626 or other law or court rule"). As previously stated, "[w]hen costs are awarded pursuant to MCL 600.2591, the appropriate standard for determining whether the motion for costs is timely is whether the motion was filed within a reasonable time after the prevailing party was determined." *In re Attorney Fees*, 233 Mich App at 699-700 (holding that the trial court did not abuse its discretion in allowing a motion for costs and fees under MCL 600.2591 to be brought 70 days after the court granted the defendants' summary disposition motion and dismissed the plaintiffs' action). MCR 7.208(J) provides that once a claim of appeal is filed, a trial court still "may rule on requests for costs or attorney fees under MCR 2.403, 2.405, 2.625 or other law or court rule, unless the Court of Appeals orders otherwise." "The trial court is not required to await the outcome of an appeal before determining the prevailing party [for purposes of MCL 600.2591]." *Meagher v Wayne State Univ*, 222 Mich App 700, 729; 565 NW2d 401 (1997). A trial court is also not required to address the issue of sanctions under MCL 600.2591 as part of a motion for summary disposition or in "a final order disposing of the claims in [the] case." *Avery*, 209 Mich App at 501-503.

In this case, the motion granting summary disposition in Aerotek's favor on the final claim against it was entered on April 19, 2018, the stipulated order of dismissal was entered on

May 16, 2018, and Aerotek filed its motion for sanctions on June 26, 2018, while plaintiff's appeal was pending in this Court. We find nothing unreasonable about the timing of Aerotek's motion in relation to the orders granting it summary disposition and dismissing plaintiff's claims. Moreover, the trial court did not actually rule that the motion was untimely but instead seemed to suggest that the motion should be denied, among other reasons, because the appeal of the summary disposition motion was pending, which is an irrelevant consideration for determining whether plaintiff's action was frivolous within the meaning of MCL 600.2591. The statute contains no requirement that a motion for sanctions be filed before a claim of appeal is filed or after the appeal has been concluded, and the statute also contains no requirement that this form of sanctions must be addressed in the context of summary disposition or before a final order dismissing the case is entered. MCL 600.2591; see also *Meagher*, 222 Mich App at 729; *Avery*, 209 Mich App at 501-503. Hence, neither the first nor third reasons given by the trial court provided a proper basis on which to decide Aerotek's motion.

With respect to the second reason, the trial court stated without further analysis or explanation that "plaintiff may have had reasonable belief in [the] negligent hiring claim when the lawsuit was filed." It appears from this assertion that the trial court may have been focused on plaintiff's apparent subjective belief in the validity of his action given that the trial court did not mention any evidence in the record on which to base a determination that such belief was objectively reasonable. At a minimum, the trial court did not provide any indication of its reasons for concluding that plaintiff's belief in the validity of his claim may have been reasonable.

However, the pertinent standard that the trial court should have employed in evaluating whether the claim in this case was frivolous is an objective, rather than subjective, one. *Meisner*, 321 Mich App at 731-734. As this Court explained in *Meisner*, 321 Mich App at 731-732:

> The frivolous-claim-or-defense provisions of the Michigan Court Rules and MCL 600.2591 impose an affirmative duty on each attorney to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed. The reasonableness of the attorney's inquiry is determined by an objective standard, not the attorney's subjective good faith. The purpose of imposing sanctions for asserting a frivolous action or defense is to deter parties and their attorneys from filing documents or asserting claims or defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose. A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted. [Quotation marks and citations omitted.]

In this case, the trial court failed to evaluate whether plaintiff's lawsuit was based on an objectively reasonable inquiry into the factual and legal viability of his claim. *Id*. The trial court also failed to address the related, and crucial, question of whether plaintiff's claim was objectively devoid of arguable legal merit, i.e., whether it was "not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Bronson*, 314 Mich App at 585 (quotation marks and citation omitted). By not addressing whether plaintiff's claim was devoid of arguable legal merit, the trial court ignored the only subparagraph under which Aerotek brought its motion for sanctions. MCL 600.2591(3)(a)(*iii*).

-15-

Only one subparagraph need be satisfied in order to find an action frivolous. MCL 600.2591(3)(a).

Nonetheless, and as the trial court was clearly aware in reaching the decision that it did, an action is not rendered frivolous merely as a result of the plaintiff's failure to prevail on the action. *Kitchen*, 465 Mich at 662. "The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted." *Jerico Const, Inc v Quadrants, Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003); see also *In re Attorney Fees*, 233 Mich App at 702 ("To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate plaintiffs' claim at the time the lawsuit was filed."). "That the alleged facts are later discovered to be untrue does not invalidate a prior reasonable inquiry." *Jerico Const*, 257 Mich App at 36. Furthermore, "[n]ot every error in legal analysis constitutes a frivolous position," and the fact that a court "concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position." *Kitchen*, 465 Mich at 663.

The trial court in this case, however, clearly erred because it did not employ the proper legal standards in issuing its ruling on Aerotek's motion. We therefore reverse the trial court's ruling on Aerotek's motion for sanctions, and remand for proceedings consistent with this opinion.[8]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

[8] Plaintiff further requests in his appellate brief that we find Aerotek's appeal vexatious under MCR 7.216(C)(1)(a). However, MCR 7.211(C)(8) provides as follows:

> A party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion filed under this rule. A request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion under this rule. A party may file a motion for damages or other disciplinary action under MCR 7.216(C) at any time within 21 days after the date of the order or opinion that disposes of the matter that is asserted to have been vexatious.

Plaintiff has not filed such a motion under MCR 7.211 in this Court. Instead, plaintiff has only raised this issue within his appellate brief. We therefore decline to address this issue, although Aerotek's appeal does not appear vexatious considering that it demonstrated error committed by the trial court.