## TORTORA v. GENERAL MOTORS CORPORATION.

1. AUTOMOBILES—CORPORATIONS—BAD DRIVING RECORD OF EMPLOYEE —BURDEN OF PROOF.

Plaintiff, injured by reason of collision with defendant corporation's car that was driven by an employee, claiming damages by reason of negligent entrustment, had burden of proving allegation of express or inferred knowledge of driver's bad driving record.

2. SAME—BAD DRIVING RECORD OF EMPLOYEE—EVIDENCE—KNOWLEDGE OF OWNER—INSTRUCTION.

Evidence adduced in action against corporation whose car was driven by an employee with a driving record such that the jury would be warranted in finding him to be unfit for entrustment with a motor vehicle by the owner, but which failed to show the owner knew of the employee's bad driving record and was under no duty to learn thereof, did not permit instruction allowing jury to find defendant liable on ground that employer had

---

REFERENCES FOR POINTS IN HEADNOTE

duty to make inspection of the public records as to such driving record (CLS 1961, §§ 257.208, 257.732).

Appeal from Saginaw; Borchard (Fred J.), J. Submitted June 5, 1963. (Calendar No. 21.) Resubmitted April 9, 1964. (Calendar No. 25, Docket No. 49,435.) Decided September 2, 1964. Rehearing denied October 6, 1964.

Case by Raymond Tortora against General Motors Corporation, a Delaware corporation, for personal injuries sustained in automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Reversed and remanded for new trial.

*Peter F. Cicinelli* and *Eugene D. Mossner,* for plaintiffs.

*Cartwright, Walker & Stenglein* (*James E. Cartwright* and *Harvey D. Walker,* of counsel), for defendant.

BLACK, J. This suit for negligence resulted from a collision of 2 automobiles, driven respectively by plaintiff and defendant's employee-driver, one Jacob F. Boike. The collision occurred on US-23, near the intersection of that highway with White Lake road, in Livingston county, during the evening of October 10, 1959. The 2 cars were proceeding in opposite directions. Each driver testified that the other negligently invaded his rightful driving portion of the highway. For present purposes it is sufficient to say that the proof portrayed typical questions of fact, for the jury, as to plaintiff's allegation of causal negligence of Boike and defendant's countering allegation of plaintiff's contributory negligence. The jury returned a verdict for plaintiff in the sum of $42,500, upon which verdict judgment was entered. The defendant, owner of the car driven by its said employee, moved for a new trial. The motion was denied. Defendant appeals.

The reader will understand without difficulty the salient reviewable question upon perusal of appellant's statement and appellee's counterstatement thereof:

### Appellant's Statement

"Did the trial court err in instructing the jury that it would be an act of negligence if the defendant, General Motors Corporation, permitted Jacob Boike to drive 1 of its automobiles when it knew, or should have known, the nature and extent of his driving record, and to charge the jury further that, as a matter of law, General Motors Corporation could have inspected public records and determined the driving record of its employee, had it chosen to do so?"

### Appellee's Counter-Statement

"Did the trial court err in allowing plaintiff to plead the theory of negligent entrustment of a motor vehicle against the corporate defendant and in allowing plaintiff to present the careless driving record of defendant's driver to the jury in support of such theory?"

The recent case of *Perin* v. *Peuler,* 369 Mich 242 (reheard and decided anew in 373 Mich 531), is amply introductive. The principal difference between the so-called negligent entrustment case considered there, and the present like case, is that in the former the Court dealt only with the plaintiff's motion for leave to amend, before trial, so as to plead such negligent entrustment by the defendant father; whereas in the present case we test for reversible error a judgment entered upon trial and jury verdict.

. Plaintiff's proof of the alleged unfitness of Boike, for entrustment with an automobile to be driven on public ways, disclosed these facts: From the time the secretary of State commenced (after the effective date of PA 1953, No 215, § 204a [CLS 1961, § 257.204a, Stat Ann 1960 Rev § 9.1409(1)]) keeping

an "individual historical driving record" of each licensed motor vehicle operator, and continuing through the moving violation which immediately preceded the collision of October 10, 1959, Boike had been arrested and convicted of speeding 11 times and convicted once of reckless driving; also that he had "been called in twice by the secretary of State's office" and warned "each time to change his driving habits" on penalty of loss of his operator's license. The proof also showed, with respect to the collision of October 10, 1959, persuasively what the jury could have and presumably did find, that Boike was driving from a football game, after dark, while under the influence of intoxicants.

Getting directly to the posed question of erroneous instruction, it is ruled that the foregoing proof, that Boike had been convicted of "moving" violations of the Michigan vehicle code 12 times during a period of less than 5 years just preceding the date of the Tortora collision, would fairly warrant a finding by fact-triers that Boike was an unfit driver, unfit that is for entrustment of a motor car on our highways by any owner or lender having knowledge, express or implied, of all or a substantial part of such record of violation and conviction. The important question, then, is whether there is any proof that Boike's record—in whole or in part—was known to the defendant owner-lender prior to the collision of October 10, 1959.

Boike, for a number of consecutive years preceding the Tortora collision, was employed by defendant General Motors as a "school instructor for the regional sales." He described his duties as instructing "dealership personnel in methods and modes of selling parts and accessories" and "teaching our own men in the sales field." He drove company cars from dealership to dealership in the course of his assigned work, and also drove them in the course of pleasure

driving and driving for personal off-duty purposes. Since the date of the Tortora collision Boike had been transferred by the defendant employer from Michigan to Ohio. There his new position is that of "district manager for Chevrolet," working "out of the Cleveland zone sales office."

Such in essence is the proof on which plaintiff relied below to make a jury question of the issue whether the defendant employer "knew or should have known" that Boike was an unfit driver. Plaintiff bore the burden of proving such allegation of express or inferred knowledge (see *Perin* v. *Peuler, supra* on rehearing at 538 and 543). His proof on that point was legally insufficient, and it is accordingly held that the jury instructions of which defendant complains (presently quoted) were reversibly erroneous.

The defendant employer may indeed have known that employee Boike was consistently finding it difficult to obey the traffic code as he drove its cars on business and pleasure. It may be, too, that the company learned sooner or later that Boike had become a chronic convict in such regard. But the record shows no proof of such knowledge, and no proof from which the jury might with propriety have inferred that the employer became possessed of such knowledge prior to the date of Mr. Boike's 13th dereliction; referring to that which occurred October 10, 1959. All plaintiff offers in support of his burden is allegation that, since the records maintained under said section 257.204a are public records (citing CLS 1961, § 257.208. [Stat Ann 1960 Rev § 9.1908]), the defendant employer was under legal duty to keep abreast of such records and to act preventively upon finding what it would have found respecting the transgressions of employee Boike in the use of its cars. No authority for such contention has been

cited. Counsel simply say (quoting what was said
to the trial judge after reference to said section
257.208) :

"All records of the department, meaning the secre-
tary of State here, shall be opened to public inspec-
tion, and these are open to General Motors, and
whether they examined this public record or not,
there is no testimony to that effect, but from the
presence and the existence of these statutes which
makes it—these records of employees of a corpora-
tion available to them at a time either before, during
or after entrustment of an automobile to them, if
they are interested, since they are held responsible
for the driving of a person to whom they consent
to drive their vehicle, we claim it is their duty to
check these records, the driving record of this man,
and—so that—in any event, even if they had not,
they had the duty to do so, and that's a jury question.
So, our position is that at the very least they should
have known of this man's record. It was available
to them; it was open to them to check, and the failure
to so do in itself is negligence, and a simple check
of these records would have made them aware that
they had a man who had a continuous record of
speeding violations, reckless driving, disobeying stop
signs, and the failure to so check—or the failure to
so check is negligence, and is entitled to be considered
by the jury under our negligent entrustment theory."

It is both true and singular that defendant came
forth with no proof disclosing a want of knowledge
on its part of Boike's record, and it is true that
defendant necessarily was in the exclusive possession
of adequate proof which at once would have brought
to rest any question as to its knowledge or want of
knowledge of Boike's traffic-troubles with the law.
But that postulate did not and does not serve to
shift the burden of going forward with requisite
proof, from plaintiff to defendant (as well it might

have done by the common law),* in view of the availability to plaintiff of modern discovery of what indeed might have turned out to be a matter of recorded corporate concern over Boike's continued traffic aberrations with company cars. As the record stood below, the jury could not impute or infer such knowledge to the corporation, there being no direct proof thereof and no proof of any relationship between the defendant employer and its employee which would lead to an inference of communication to the employer of what Boike was doing too regularly on the highways.

The trial judge instructed the jury:

"Now, in this case the plaintiff has charged that General Motors—defendant General Motors Corporation negligently entrusted 1 of its automobiles to Jacob Boike when it knew, or in the exercise of reasonable care should have known, that he was a negligent and unfit driver who had a large number of previous convictions for traffic violations, including speeding, running a stop sign and reckless driving. If you find that the act of the defendant corporation in permitting Jacob Boike to drive 1 of its automobiles when it knew, or should have known the nature and extent of his driving record, you may find such to be an act of negligence, and if it was a proximate cause of the ensuing collision and the injuries to plaintiff, then you should bring back a verdict for the plaintiff and against the defendant General Motors Corporation.

"In connection with the question of whether defendant General Motors Corporation knew, or in the exercise of reasonable care should have known, of

---

* For the "general rule of evidence, that the burden of proof lies on the person who wishes to support his case by a particular fact which lies more peculiarly within his knowledge, or of which he is supposed to be cognizant," see *Selma, R. & D. R. Co.* v. *United States,* 139 US 560, 567, 568 (11 S Ct 638, 35 L ed 266) quoting 1 Greenleaf, Evidence and 1 Best, Principles of Evidence. For an extended discussion of the same rule, see 2 Jones, Blue Book of Evidence, § 181. pp 26–30.

Jacob Boike's driving record, I instruct you that it is the law of this State that such driving records are open to public inspection. We have a law in the State of Michigan which requires judges, magistrates and clerks of courts to keep a record of every case where a driver of a motor vehicle is charged with a violation of the State motor vehicle code. I instruct you that these records, by law, must be forwarded to the secretary of State's office in Lansing and that these records are kept there as a permanent list of each driver's driving record. The portion of the law which provides for the forwarding of these records also provides for public inspection in the following language: It is taken from CLS 1961, § 257.732 (Stat Ann 1960 Rev § 9.2432[f]). 'The department (State) shall keep all abstracts received hereunder [referring to records and convictions for traffic violations] at its main office and the same shall be open to public inspection during reasonable business hours.' We have also another law in this State pertaining to public inspection of records, which reads as follows: CLS 1961, § 257.208 (Stat Ann 1960 Rev § 9.1908). 'Records; open to public inspection; destruction. Section 208(a). All records of the department * * * shall be open to public inspection under such rules and regulations as the secretary of State may prescribe.' In this regard I instruct you that, as a matter of law, defendant General Motors Corporation could have inspected and determined the driving record of its employee, Jacob Boike, had it chose to do so, since this information was available to the defendant corporation upon request."

Such instruction was reversibly erroneous. The circuit court's judgment is therefore reversed and the cause is remanded for new trial. Costs to defendant.

No other raised question is apt to arise on retrial. It is not amiss to suggest, however, should plaintiff seek again to hold defendant for negligence arising

from such entrustment theory, that the trial judge might well consider the advisability of calling upon plaintiff for an at-chambers offer, on the record, of what he proposes to prove in support of that theory. The trial judge may then, to insure best that there be no prejudice arising from receipt of insufficient proof, appraise the offer for legal sufficiency before original proof, supportive of such theory, is received before the jury.

KAVANAGH, C. J., and SMITH and ADAMS, JJ., concurred with BLACK, J.

O'HARA, J. (*concurring in reversal*). I depend on Mr. Justice BLACK's recitation of the facts herein and accept them. I reach the same conclusion as did he, but for a different reason. My concern in this case is with the following statement in the trial court's charge:

"If you find that the act of the defendant corporation in permitting Jacob Boike to drive 1 of its automobiles when it knew, or should have known the nature and extent of his driving record, you may find such to be an act of negligence, and if it [the act of negligent entrustment] *was a proximate cause of the ensuing collision and the injuries to plaintiff, then you should bring back a verdict for the plaintiff and against the defendant General Motors Corporation.*" (Emphasis supplied.)

This is not only reversibly erroneous, it is dangerously confusing and contains the potential for grave injustices. The legal point upon which I would reverse is not the same as that of Mr. Justice BLACK. It is not that there was insufficient proof that the employer knew or should have known of Boike's dismal driving record but rather that negligent entrustment can never *per se* become a proximate cause

of a given collision. Negligent entrustment is a legal doctrine by which the act of entrustment relates the actions of the entrustor to the acts of the entrustee. When the entrustee injures a third party by the use of an object entrusted, the entrustor's liability is to be measured by the same legal rules of responding in damages as the entrustor himself would be measured had he occasioned the injury. Negligent entrustment is a species of agency. Like agency, it is founded in the basic maxim *qui facit per alium facit per se.* We should not extend agency to the point where entrustment of a motor vehicle to a known incompetent renders the entrustor negligent irrespective of the entrustee's proximately causal negligence.

I note, as did Mr. Justice BLACK, that my decision in *Perin* v. *Peuler* on rehearing (373 Mich 531, 559) should be read and considered in connection with the decision herein.

I concur in reversal but for the reason herein specified.

KELLY, J. (*concurring in reversal*). For the reasons stated in my original opinion in *Perin* v. *Peuler,* 369 Mich 242, and again in my opinion filed this day upon the second rehearing in that case (373 Mich 531, 547), I concur with Mr. Justice BLACK in reversal in the instant case.

DETHMERS, J., concurred with KELLY, J.

SOURIS, J., took no part in the decision of this case.