*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGEANN LEE BELANGER and JAMIE
PETERSON,

        Plaintiffs-Appellants,

v

DARREN, INC. and JOSHUA HARNDEN,

        Defendants-Appellees.

UNPUBLISHED
June 08, 2026
1:31 PM

No. 371471
St. Clair Circuit Court
LC No. 21-001632-CD

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Plaintiffs-Appellants, Georgeann Belanger and Jamie Peterson (plaintiffs) initiated this negligence action against Defendant-Appellee Darren Inc. (defendant) after defendant's employee, Defendant-Appellee Joshua Harnden[1] sexually harassed plaintiffs while they were shopping in defendant's gas station store. The trial court granted summary disposition in favor of defendant, finding that it owed no duty to plaintiffs because defendant had no actual or constructive knowledge of Harnden's propensity to sexually harass its customers. The trial court also dismissed plaintiffs' loss of consortium claim because the underlying negligence claim upon which it relied failed. Plaintiffs now appeal that order. For the reasons set forth in this opinion, we affirm.

## I. FACTUAL BACKGROUND

**The December 24 and December 27 Incidents**

On December 24, 2020, Jamie Peterson walked into a BP gas station store to purchase scratch-off lottery tickets. There was no one in the store at the time besides the clerk and Harnden, who took a $100 bill from the cash register and asked Peterson to "show him [her] tits" while also making comments about her being "so hot and all this stuff." Peterson replied, "I don't think so," and left the store. About two days later, Peterson testified that she went back to the gas station and

---

[1] Harnden has not filed anything in this Court or otherwise participated in the instant appeal.

explained to the employee who was working that day, Francis Schomberg ("Frank"), what happened between her and Harnden. Peterson recalled that Frank "couldn't believe it" and apologized to her. Frank later testified that he had no recollection of this conversation or of Peterson telling him about the December 24 incident at any time. Frank also never told defendant's owner or any other employees about the incident.

On December 27, 2020, Georgeann Belanger went to the same gas station. While Belanger was pumping gas, she heard a male voice through the speaker say, "If I give you $200, will you show me your tits?" She ignored this comment, but the same voice asked the question again through the speaker another three to four times. Belanger went inside the gas station store to get something to eat and drink. She and Harnden were the only people in the store at that time. While Belanger was walking to get a sandwich and drink, Harnden took out $200 from the cash register and again asked her if she would "show him [her] tits" for $200. Belanger asked Harnden to stop, and told him, "there's cameras everywhere, they're watching you, us." Harnden asked Belanger if she would go into the bathroom with him where there were no cameras. Belanger ignored Harnden and continued to fill up her drink from the soda machine.

When Belanger turned around, Harnden was standing directly behind her, facing her with his shirt unbuttoned at the bottom, his belt unbuckled, and his zipper down. Harnden was holding his penis in his hand, which appeared to be erect, and shaking it at Belanger. Belanger covered her face with her hands, ran to the back of the store, and hid while Harnden went back behind the register. While hiding, Belanger heard the shopkeeper's bell on the front door ring and got the attention of the person who entered the store. That person happened to be Peterson.

When Peterson entered, Harnden came from the back of the store and started apologizing for the incident that occurred on December 24. Harnden said he had "demons that he couldn't control." Peterson did not respond and proceeded to the soda machine to get a drink. Peterson felt Harnden come up behind her and turned around to Harnden and asked why he was "sneaking up on [her.]" Harnden had his hands in his pants, which were unbuttoned, and his shirt was up so she could see his pubic hair and a part of his penis. Harnden then took his hands out of his pants and walked back behind the counter.

After Harnden went back behind the counter, Peterson noticed Belanger hiding in the back of the store. Belanger asked Peterson to come over to her and asked Peterson "to please not leave the store without [her]." Belanger went to the counter to pay for her items while Peterson waited for her by the door. From behind the counter, Harnden moved his hand around the Plexiglass barrier and touched Belanger's breast. Belanger and Peterson left the store together and Peterson called the police.

After Belanger got back to her car, Harnden came outside and started "beating on [her] car and trying to get in the windows of [her] car." Belanger rolled down her window and told him he needed to go away and not be at work." The police arrived and spoke to Harnden, who initially denied what he did to Belanger. Eventually, however, Harnden said he could not tell the officer "what he had done because his 'demon' would not let him." Harnden told the officer that he had "been fighting this 'demon' for the last two months."

Harnden explained that the demon came out when he drank and Harnden admitted to having a shot of Crown Royal before coming to work that day. The officers observed Harnden slurring his words and unable to stand up straight. Harnden agreed to submit a preliminary breath test, which showed a blood alcohol content of .138.

Plaintiffs later testified that one of the officers that reported to the scene, Trooper McClure, told them that the same type of incident happened to his family member, who noticed Harnden acting "weird" and "perverted" towards her while she was at the same gas station.

Defendant fired Harnden that same day.[2]

**Defendant's Employment Practices And Hiring of Harnden**

Jullie Naimi owns defendant Darren, Inc., which owns and operates the BP gas station where the underlying incidents took place. Jullie's son, Darren Naimi, is not an employee of defendant, but sometimes helps his mother with the business' paperwork, inventory, and technology, and inventory, the latter of which includes security cameras installed inside the gas station store that record most areas except for the bathrooms. Jullie, for her part, goes to the gas station a few days a week to work and personally check on matters.

Jullie also oversees hiring and training new employees. When hiring someone new, Jullie obtains a copy of that person's ID and address to keep in her files and trains them for three days. Defendant does not have any written policies related to training. Instead, Jullie conducts all training verbally in person. When Jullie hires a new employee, she tells them she expects, "honesty, [be] nice to [the] customer[s], come on time."

Jullie hired Harnden to work at the gas station in 2016. At the time of the incidents at issue, defendant did not conduct background checks on new hires, including Harnden. Jullie admitted that she did not know of Harnden's criminal record when she hired him, later testifying that, "[h]e got hired because I didn't know." Harnden worked at the gas station from 3:00p.m. to 11:00 p.m. five days a week. Though Harnden did not come to work while serving a 93-day jail sentence at some point during 2016, Jullie did not recall Harnden's absence. According to Jullie, prior to December 2020 incidents, Harnden was a "good worker" who came to work on time, worked holidays, and did not miss shifts. Jullie never saw Harnden drinking or stealing when she reviewed the store's security cameras. Frank, who typically worked the shift after Harnden, similarly testified that he did not remember seeing Harnden intoxicated during the shift change.

**Procedural History**

Plaintiffs filed their first amended complaint against defendant, alleging that defendant negligently supervised, hired, retained, and trained Harnden. Further, without naming Belanger's

---

[2] Harnden was subsequently charged in connection with these events and pleaded guilty to one count of attempted misdemeanor aggravated indecent exposure and two counts of attempted misdemeanor criminal sexual conduct in the fourth degree and was sentenced to one year in jail and two years of probation.

husband, Kenneth Belanger, as a plaintiff, the first amended complaint asserted a loss of consortium claim on his behalf. At the close of discovery, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that plaintiffs' negligent hiring, retention, supervision, and training claim failed because defendant was not liable for Harnden's unforeseeable, self-interested criminal conduct. Defendant further argued that Kenneth's derivative loss of consortium claim failed both because Kenneth was not a named plaintiff in the case and because the underlying negligence claim failed.

The trial court granted the motion, finding that defendant owed no duty to plaintiffs because defendant had no actual or constructive knowledge of Harnden's propensity for violence or to conduct the actions at issue in this case and that Harnden's actions were not foreseeable. The trial court denied the loss of consortium claim because Kenneth was not a named plaintiff and because the underlying negligence claim failed.[3]

This appeal followed.

## II. ANALYSIS

## 1. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Maskery v Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003). The test for a motion under MCR 2.116(C)(8), or failure to state a claim upon which relief can be granted, tests only the legal sufficiency of the claim, not whether there is any factual support for the claim. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). All factual allegations in the pleadings are required to be accepted as true along with any reasonable inferences or conclusions which may fairly be drawn from the facts alleged. *McCoy v Berrien Co Clerk*, 348 Mich App 602, 613; 19 NW3d897 (2023).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. A motion under MCR 2.116(C)(10) may only be granted where the proffered evidence fails to establish a genuine issue of material fact. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160.

---

[3] After granting summary disposition to defendant, the trial court granted plaintiffs' motion for leave to file a second amended complaint, adding claims against Harnden for assault and intentional infliction of emotional distress. Default judgment was entered against Harnden in the amount of $750,000 in Belanger's favor and $250,000 in Peterson's favor. Because plaintiffs' brief on appeal only makes arguments related to the trial court's order granting summary disposition, we do not address the default judgment against Harnden.

-4-

## 2. THE TRIAL COURT CORRECTLY DISMISSED PLAINTIFFS' NEGLIGENT HIRING AND RETENTION CLAIM AGAINST DEFENDANT

Employers have a duty to exercise reasonable care when hiring and retaining employees. *Hersh v Kentfield Builders, Inc*, 385 Mich 410, 414; 189 NW2d 286 (1971); *McClements v Ford Motor Co*, 473 Mich 373, 381 n 6; 702 NW2d 166 (2005). To establish a claim of negligent hiring and retention, a plaintiff must show that the defendant-employer had "actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable." *Mueller v Brannigan*, 323 Mich App 566, 575; 918 NW2d 545 (2018), citing *Brown v Brown*, 478 Mich 545, 553-556; 739 NW2d 313 (2007) (emphasis in original). "[E]mployers are not expected to anticipate that their employees will engage in criminal conduct without some particularized forewarning thereof." *Mueller*, 323 Mich App at 575. And employers can assume that their employees will obey the criminal law. *Brown*, 478 Mich at 555.

The trial court held that "[plaintiffs'] claims fail for lack of duty" and "whether there is a duty owed is a question of law." It further found that Peterson's act of reporting the first incident to Frank did not sufficiently give notice to defendant because there is no evidence that Frank told defendant about what happened. The trial court concluded, "[plaintiffs] failed to provide any evidence that [defendant] was actually . . . on notice of any inappropriate behavior . . . by employee Harnden. There is no evidence that Harnden's actions were foreseeable." We agree.

### i. Defendant Had No Duty To Conduct A Background Check

Plaintiffs argue that Harnden's criminal history put defendant on notice of Harnden's propensity to commit sexual misconduct and that defendant was negligent in failing to discover said history in part by failing to conduct a background check. This argument fails because defendant had no duty to conduct a background check on Harnden. In *Tyus v Booth*, 64 Mich App 88, 93; 235 NW2d 69 (1975), this Court explained that employers are generally not automatically required to conduct "in-depth" background investigations of their employees, even in circumstances where an investigation would reveal an employee's criminal history.[4] This Court continues to reinforce *Tyus*' holding in the employment context. See *Hernandez v Moore*, unpublished per curiam opinion of the Court of Appeals, issued September 17, 2019 (Docket Nos. 343648, 344954), p 7 (defendant-employer had no duty to investigate its employee until it discovered a police report or otherwise learned of the employee's previous workplace altercation);

---

[4] *Tyus* is unclear as to what exactly an "in-depth" background check requires. *Tyus* relied on the reasoning from *Tortora v Gen Motors Corp*, 373 Mich 563, 567-568; 130 NW2d 21 (1964), which in the context of a negligent entrustment claim, held that the defendant employer was not required to actively seek its employee's driving record although it was publicly available. *Tyus*, 64 Mich App at 91-92. The *Tyus* court concluded, "defendant, a gasoline service station employer, was not required to conduct an in-depth background investigation of his employee. An employer is not absolutely liable for assault committed by his employee. The duty is to use reasonable care to assure that the employee known to have violent propensities is not unreasonably exposed to the public." *Id*. at 92. Extending this reasoning to the instant case, defendant had no duty to actively seek or obtain records related to Harnden's criminal history.

see also *Kendrick v Ritz-Canton Hotel Co, LLC*, unpublished per curiam opinion of the Court of Appeals, issued July 27, 2006 (Docket No. 256696), pp 3-5 (defendant-employer was not required to affirmatively investigate the publicly available sex offender registry or conduct a background check on its employee).

Plaintiffs generally argue throughout their brief that defendant *should have* conducted a background check on Harnden but fail to cite any authority to indicate that defendant was *required* to do so. They emphasize Jullie's testimony that, had she known of Harnden's criminal history, he would not have been hired. But this is immaterial to our analysis. See *Brown*, 478 Mich at 556 ("[W]e will not transform the test of foreseeability into an 'avoidability' test that would merely judge in hindsight whether the harm could have been avoided."). Plaintiffs fail to establish defendant owed a duty to conduct a background check on Harnden or otherwise breached a duty owed to its customers by hiring Harnden without conducting a background check.

ii.      Defendant Had No Actual Or Constructive Notice

Plaintiffs next argue that defendant was put on notice of "Harnden's abuse of alcohol and reckless behavior" after he was absent from work for 93 days while serving a jail sentence related to his 2016 convictions and that plaintiffs had notice of "Harnden's harassing behavior" before the December 27 incident because Peterson had told Frank what happened on December 24. We disagree.

First, Harnden serving a jail sentence in connection with his 2016 convictions of operating while intoxicated and driving while license suspended, revoked, or denied does not give rise to actual or constructive notice. Jullie testified that she did not remember Harnden's absence from work. And even if Jullie did know about Harnden's time in jail, because the 2016 convictions are substantially different from the sexual misconduct at issue, knowledge of Harnden serving a sentence for the drunk-driving and suspended license convictions while employed by defendant would not lead defendant to predict that Harnden would commit sexual misconduct several years later. *Mueller*, 323 Mich App at 575. To establish a claim of negligent hiring and retention, a plaintiff must establish that the employer had actual or constructive knowledge that would have made the *specific* wrongful actions of the employee at issue predictable. *Id*. Harnden's criminal history includes a misdemeanor assault and battery conviction from 2007 and convictions for one count of operating while intoxicated and one count of operating while license suspended, revoked, or denied from 2016.[5] These prior convictions are substantially different from Harnden's convictions arising from the incident at issue. Compare MCL 750.81 (misdemeanor assault and battery), MCL 257.625 (operating while intoxicated), and MCL 257.904b (driving while license suspended, revoked, or denied) with MCL 750.335A2B (aggravated indecent exposure) and MCL

---

[5] Plaintiffs also argue Harnden's 2014 arrest for disturbing the peace put defendant on notice that Harnden would later commit sexual misconduct. However, under the Elliott-Larsen Civil Rights Act, defendant could not have considered these arrests in making employment decisions. MCL 37.2205a(1) ("An employer . . . shall not in connection with an application for employment . . . or in connection with the terms, conditions, or privileges of employment . . . request, make, or maintain a record of information regarding a misdemeanor arrest, detention, or disposition where a conviction did not result.").

750.520E1A (criminal sexual conduct - 4th degree).  Moreover, the length of time between Harnden's previous crimes with the instant offense further weighs against foreseeability.  See *Hamed v Wayne County*, 490 Mich 1, 16, n 36; 803 NW2d 237 (2011) (noting that "the temporal distance and the dissimilarity between past conduct and the conduct at issue make it unreasonable to conclude that an employer could have foreseen that" the employee would engage in the sexual conduct at issue in the case).

Second, plaintiffs argue that Frank was acting as an agent of defendant and therefore Frank's alleged knowledge of the December 24 incident was imputed to defendant.  See *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 214; 476 NW2d 392 (1991).[6]  As already mentioned, at Frank's deposition, he could not recall whether Peterson ever told him about the December 24 incident and he did not recall ever reporting it to Jullie.  Jullie also testified that she was never informed of the incident either until Harnden's arrest on December 27.  Because there is no evidence that plaintiffs reported Harnden's inappropriate statements to defendant prior to the December 27 incident, we find no questions of fact and no error in the trial court's decision to dismiss this claim.  See *LaDuke v Ziebart Corp*, 211 Mich App 169, 173; 535 NW2d 201 (1995) (holding that an employee's alleged knowledge of a coworker's threats was not imputed to the defendant-employer when the employee did not report the threats to the employer).

### 3. THE TRIAL COURT CORRECTLY DISMISSED PLAINTIFFS' NEGLIGENT SUPERVISION AND TRAINING CLAIM AGAINST DEFENDANT

When reviewing claims of negligent supervision and training, courts must analyze the foreseeability of an employee's actions.  *Mueller*, 323 Mich App at 577.  Our Supreme Court in *Mueller* found that even where the defendant employer created an environment of "grossly incompetent or nonexistent" supervision and training, such as employing a "drunk and irresponsible" business owner and knowledge of frequent physical fights at the premises, the employer did not breach its duty when employees engaged in unforeseeable criminal conduct.  *Id.* In *Mueller*, several employees and former employees of the defendant employer chased a patron after he left the employer's premises and beat him to death.  *Id.* at 569.  The court concluded that the employees' conduct so "radically depart[ed] from expected social norms" that a business would not "perceive a need to craft rules and training against that degree of blatantly criminal misconduct."  *Id.* at 578.

Here too, the trial court dismissed plaintiffs' claim on the basis that Harnden's sexual misconduct was unforeseeable.  Because Harnden's sexual misconduct was outrageous and fell outside social norms, we agree with the trial court.  Plaintiffs argue that there was "little done" by defendant during the hiring and training process.  But we note that defendant did have some protocols including (1) three days of new hire training; (2) maintaining security cameras overseeing almost all areas of the gas station store; (3) Jullie personally visiting the store multiple

---

[6] Though not adequately briefed by plaintiffs, the parties discussed whether Frank acted as an agent of defendant at oral argument in addition to the short interval between the December 24 and December 27 incidents.  The record is clear that, in the 36-hours between these two incidents, no notice was provided to defendant.

times a week to check in; and (4) employees reporting concerns directly to Jullie. Plaintiffs fail to show how these protocols are inadequate and ignore the fact that, in Michigan, employers can assume that their employees will not engage in criminal conduct. *Brown*, 478 Mich at 555; *Hamed*, 490 Mich at 15 (declining to impose an employer liability standard that would require employers to become "insurers responsible for recompensing victims for the criminal acts of their employees"). The trial court therefore correctly dismissed plaintiffs' negligent supervision and training claim.

## 4. PLAINTIFFS' STATEMENTS REGARDING HARNDEN'S PRIOR ALLEGED INCIDENTS CONSTITUTE INADMISSIBLE HEARSAY

Plaintiffs argue that the trial court erred in failing to consider plaintiffs' statements regarding what Trooper McClure allegedly told them about Harnden's prior misconduct. We again disagree.

Belanger testified that McClure told her that his "wife's sister or sister-in-law" allegedly had a prior encounter with Harnden, and Peterson testified that McClure told her that his "sister or sister-in-law" had a prior alleged encounter with Harnden. This testimony is inadmissible hearsay. MRE 801(c); MRE 802. To survive a motion for summary disposition brought under MCR 2.116(C)(10), a non-moving party must provide documentary evidence to establish a genuine issue of material fact. MCR 2.116(G)(4). Importantly, courts may consider this evidence only to the extent that it is substantively admissible. MCR 2.116(G)(6) ("Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) *shall only be considered to the extent that the content or substance would be admissible as evidence* to establish or deny the grounds stated in the motion.") (emphasis added). Thus, the trial court was correct to not consider this inadmissible evidence in awarding summary disposition.

Further, even if these statements were admissible, they would not have attributed liability to defendant. Plaintiffs could not identify who exactly McClure was talking about or any details related to the alleged encounter. The testimony further failed to indicate that defendant knew or should have known of the alleged prior encounters. "Parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993).

## 5. THE TRIAL COURT CORRECTLY FOUND THAT PLAINTIFFS' LOSS OF CONSORTIUM CLAIM FAILED AS A MATTER OF LAW

Finally, we agree with the trial court that Kenneth cannot recover for loss of consortium because the negligence claim upon which it relies fails. Under Michigan law, a spouse's claim for a loss of consortium is derivative of the injured spouse's underlying claim. *Eide v Kelsey-Hayes Co*, 431 Mich 26, 29; 427 NW2d 488 (1988) (explaining that a loss of consortium claim is derivative because "it does not arise at all unless the other, impaired spouse has sustained some legally cognizable harm or injury"); *Moss v Pacquing*, 183 Mich App 574, 583; 455 NW2d 339 (1990) (" [A spouse's] recovery for loss of consortium stands or falls upon [the other spouse's]

recovery of damages."). Without Belanger prevailing on her negligent hiring, retaining, supervision, and training claims against defendant, Kenneth cannot recover for loss of consortium. Because that negligence claim fails as a matter of law, so too does Kenneth's loss of consortium claim.

Affirmed.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock